1  **KRONENBERGER ROSENFELD, LLP**

2  Karl S. Kronenberger (CA Bar No. 226112)
   Jeffrey M. Rosenfeld (CA Bar No. 222187)

3  150 Post Street, Suite 520
   San Francisco, CA 94108

4  Telephone: (415) 955-1155
   Facsimile: (415) 955-1158

5  karl@KRInternetLaw.com
   jeff@KRInternetLaw.com

6

7  Attorneys for Plaintiffs RICHARD KELLY and
   MANNY PAGKALINAWAN, individually and

8  on behalf of a class of similarly situated persons

9

10

11

12                    **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**

13

14  **RICHARD KELLY**, an individual, and          **CLASS ACTION**
    **MANNY PAGKALINAWAN**, an individual,

15  individually and on behalf of a class of        Case No. 3:16-cv-00567
    similarly situated persons,

16                                                  **COMPLAINT FOR:**

17             Plaintiffs,                          • **VIOLATION OF BUSINESS &**
                                                       **PROFESSIONS CODE §17200**

18         v.                                       • **VIOLATION OF BUSINESS &**
                                                       **PROFESSIONS CODE §17500**

19  **COIN, INC.**, a Delaware corporation doing    • **VIOLATION OF CALIFORNIA**
    business in California as Coin Apps, Inc.;         **CONSUMER LEGAL REMEDIES**

20  and **DOES 1-10**, inclusive,                      **ACT, CIVIL CODE §§1750 *ET***
                                                       ***SEQ.***

21             Defendants.                          • **VIOLATION OF CALIFORNIA**
                                                       **SONG BEVERLY CONSUMER**

22                                                     **WARRANTY ACT, CIVIL CODE**
                                                       **§§1792 *ET SEQ.***

23
                                                    • **MISREPRESENTATION**
24                                                  • **BREACH OF CONTRACT**

25
                                                    **DEMAND FOR JURY TRIAL**
26

27

28

Case No. 3:16-cv-00567                                              **COMPLAINT**

Plaintiffs Richard Kelly and Manny Pagkalinawan bring this action individually and on behalf of a class of similarly situated persons, by and through their undersigned counsel, and allege as follows:

**INTRODUCTION**

1.      Defendant Coin, Inc. ("Coin") took in millions of dollars in payments from consumers based on the promise of a product that would simplify their lives.  However, Coin failed to disclose a major problem: the product did not work where it was intended to work.

2.      The product at issue, a "Coin device," is a thin plastic credit card-shaped digital instrument. The Coin device contains a digital storage system that holds a consumer's credit card and debit card information. The Coin device also contains a magnetic stripe similar to the stripe on a credit or debit card.

3.      In theory, the Coin device allows a consumer to use the device in lieu of the consumer's credit and debit cards. First, the consumer uploads his/her credit and debit card information to the Coin device. Then, when the consumer wishes to make a purchase, he/she uses a button on the Coin device to select a credit or debit card. The consumer then swipes the Coin device through the credit/debit card terminal or provides the Coin device to the merchant to swipe through the terminal. In theory, the purchase is then complete just as if the consumer had used his/her credit/debit card rather than the Coin device.

4.      The purpose of the Coin device is to consolidate all of a consumer's credit and debit cards into a single card. Thus, in marketing the Coin device, Coin promised that with the Coin device, **consumers would only need to carry a single card with them, and they could leave all of their other cards at home**. More specifically, Coin portrayed the Coin device as a comprehensive solution for consumers who disliked carrying multiple plastic cards in their wallets. By loading the Coin device with the data for multiple credit and debit cards, a consumer could supposedly use the single Coin device instead of carrying and using multiple individual cards.

5.    However, Coin's marketing promises were lies. Coin marketed a product that it knew would not work with many, and perhaps most, merchants. Contrary to Coin's representations, a consumer could not rely on a Coin device as his/her sole credit/debit card. Rather, even with a Coin device, consumers still had to carry all of their credit and debits cards with them.

6.    In making these misrepresentations about the Coin device, Coin violated California's Unfair Competition Law, California's False Advertising Law, the Consumers Legal Remedies Act, the Song Beverly Consumer Warranty Act, and California common law. This action seeks to recover restitution and damages for Plaintiffs and the class of consumers, as more fully defined below, who purchased the defective Coin device during the advance sale period.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332(d) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and this matter is a class action in which a member of the plaintiff class is a citizen of a different State from one or more Defendants. The exceptions to jurisdiction set forth in 28 U.S.C. §1332(d)(4) do not apply because greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are not citizens of California.

8.    This Court has personal jurisdiction over Coin because a substantial part of Coin's misconduct that gave rise to this action occurred in California, and on information and belief, Coin is based in San Francisco, California.

9.    This Court is a proper venue under 28 U.S.C. §1391 because Coin resides in this judicial district, this Court is in a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, and Coin is subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

10.    Pursuant to Local Civil Rules 3-2 and 3-5, this action should be assigned to

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  the San Francisco Courthouse because a substantial part of the events or omissions that

2  give rise to Plaintiffs' claims occurred in San Francisco.

### PARTIES

4      11.     On information and belief, Defendant Coin, Inc. is a Delaware corporation

5  with its principal office in San Francisco, California, which does business in California as

6  "Coin Apps, Inc."

7      12.     Plaintiff Richard Kelly is an individual residing in Portland, Oregon, and is a

8  citizen of that State.

9      13.     Plaintiff Manny Pagkalinawan is an individual residing in San Francisco,

10 California, and is a citizen of that State.

11     14.     Defendants Does 1 through 10 inclusive ("the Doe defendants") are persons

12 and/or entities of unknown form whose true identities are currently unknown to Plaintiffs,

13 but which will be pled further through amendment if and when the same becomes known

14 to Plaintiffs. The Doe defendants are Coin board members, officers, and/or investors who

15 approved, participated in, and rendered material assistance with respect to the course of

16 conduct alleged herein, all in connection with the development, marketing, and sale of the

17 Coin device during the advance sale campaign. The Doe defendants, along with Coin,

18 knew of the defects with the Coin device and the delays that would occur in the delivery of

19 the product after it had been sold through Coin's advance sale campaign, or were

20 reckless in not so knowing, and provided material assistance to Coin despite knowing

21 that, or in reckless disregard of the fact that, Coin was engaging in wrongful and unlawful

22 conduct as further stated herein. Accordingly, the Doe defendants are equally responsible

23 to Plaintiffs and the members of the Class alleged herein, and are sued herein under the

24 same theories applicable to Coin generally.

25     15.     Upon information and belief, at all times all Defendants were the principals,

26 agents, affiliates, partners, and/or co-conspirators of each other, and each acted within

27 the course, scope, and authority of such relationships so that, as a result, all Defendants

28 are jointly and severally liable for the acts alleged herein.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

**FACTUAL ALLEGATIONS**

**Magnetic Cards and the Coin Device**

16.     Credit and debit cards contain a magnetic stripe on the back of the cards. Data about the card account and the accountholder are stored and encrypted on this stripe.

17.     The magnetic stripe is divided into two or three tracks, which are physical zones running the length of the magnetic stripe. The data on the first track of the magnetic stripe is referred to as "track 1 data," and the data on the second track of the magnetic stripe is referred to as "track 2 data."

18.     Track 1 data includes the account number, the accountholder's name, the expiration date, and the service code.

19.     By contrast, track 2 data does not contain alphabetic text. Thus, while track 2 data also includes the account number, the expiration date, and the service code, it does not include the accountholder's name.

20.     The data on the magnetic stripe is read when a merchant or consumer swipes the card through a point-of-sale ("POS") terminal. The POS terminal then transmits the data to the cardholder's bank to verify the card and effectuate the purchase.

21.     While a sizeable portion of POS terminals in North America do not require the transmission of track 1 data before authorizing a credit or debit card transaction, there is also a sizeable portion that do require track 1 data before authorizing transactions. In other words, a sizeable portion of merchants in North America require the transmission of the accountholder's name before authorizing a credit or debit card transaction, and the accountholder's name is only contained in a card's track 1 data and not in its track 2 data.

22.     Thus, if a particular merchant's POS terminal requires the transmission of track 1 data, and the card does not contain track 1 data or the track 1 data is unreadable, the transaction will not be authorized and the entire card will be unusable with that

merchant.

23.    Therefore, as a practical matter, a credit or debit card must have track 1 data for a consumer to use it reliably among various merchants, some of which will require track 1 data to complete a transaction.

24.    Many consumers have more than one credit and debit card. Some carry many more than one card. The necessity of carrying each card in its physical form means that many consumers have to carry wallets or other accessories that become uncomfortably bulky.

25.    Coin presented the Coin device as a way to eliminate this problem. The Coin device is an electronic device that is the same dimensions as an ordinary credit or debit card. The Coin device has a button and a small LCD screen on its front, and a magnetic stripe on its back. It is powered by a small unreplaceable battery that is intended to have a charge life of approximately two years.

26.    The Coin device was intended to function by storing the data from each of a consumer's cards, and then, when a consumer wishes to make a purchase, transmitting the data for the selected card to the magnetic stripe on the back of the Coin device to be read by a POS terminal. Upon receiving a Coin device, the consumer would insert a small swipe device (also provided by Coin) into his or her smartphone, download and install the proprietary Coin app, and then swipe each card through the swipe device. When a card is swiped, the Coin app would read the data off the card and store it, allowing the consumer to name each set of data (such as, "Visa," "MC" (for MasterCard), or "AMEX" (for American Express")) in the app. The Coin app would then transmit that data into the Coin device via a secure Bluetooth connection. After the swiping process and the transmission to the Coin device are accomplished for each card, the Coin device would then hold the data for each of the consumer's cards.

27.    Once a consumer had loaded all of his or her cards' data into the Coin device as described above, the intended purpose of the Coin device —which was the main appeal presented by Coin in its marketing—was to function as a substitute for all of

1   the consumer's credit and debit cards, allowing the consumer to leave those physical

2   cards at home and carry only the single Coin device instead. When the consumer wanted

3   to make a purchase, he or she would use the Coin device instead of the traditional plastic

4   credit or debit card. The consumer would press the button on the front of the Coin device

5   to cycle through the card nicknames as they appeared on the LCD screen until the card

6   that the consumer wanted to use was selected.  The Coin device would then be swiped

7   through a merchant's POS terminal, and the terminal would read the data for the

8   selected card from the magnetic stripe on the back of the Coin device, just as it would do

9   with a conventional debit or credit card.

10      28.     In short, by selecting a particular card on the Coin device's LCD screen, the

11   consumer would essentially make the Coin device's magnetic stripe function as the

12   magnetic stripe on the corresponding physical card itself, and the data for that card

13   would be transmitted at the point of sale. In that way, the Coin device was intended to

14   function as a replacement for the physical card. And because the Coin device could store

15   data from more than one physical card, it would keep the consumer from having to carry

16   around all of his/her physical cards. This, of course, was the appeal driving Coin's

17   marketing of the Coin device.

18      29.     Coin also included a security feature in the Coin device which was

19   supposed to protect the consumer against unauthorized use of the Coin device if the

20   device were ever lost, stolen, or otherwise separated from the consumer. The Coin

21   device used a low-power Bluetooth connection between itself and the consumer's

22   smartphone to gauge its proximity to the consumer. If the consumer left the Coin device

23   and walked away (for example, if he or she forgot to retrieve the Coin device from a

24   restaurant server or retail clerk after paying), the Coin app on the consumer's

25   smartphone would detect that the Coin device was no longer in proximity to the

26   smartphone and would alert the consumer that the Coin device had been left behind. And

27   until the Coin device was retrieved and the Bluetooth connection was re-established, the

28   Coin device would be locked and unusable.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

**Coin's Advance Sales Campaign**

***"All you ever need is one. ~~One Coin for all your cards."~~*** [1]

30.    Coin raised interest in—and revenues from—the Coin device through one of the most common advance sale practices used by new technology companies. Known as "crowdfunding," the practice involves promoting and conducting advance sales of products that have not been fully manufactured, and in some cases (like with the Coin device) products that have not been manufactured to the point where they can be delivered to purchasers.

31.    The Coin device, which in 2013 was not yet available to consumers, was marketed and sold to the public in what has been described as one of the most instantly successful crowdfunding campaigns ever. Coin's campaign reaped advance sales revenue of over $19 million in just two months (representing a per-unit advance sales price of $50 plus $5 shipping charge), and it is believed that Coin realized millions of dollars more during the entirety of the advance sales period.

32.    The chief marketing vehicle of Coin's crowdfunding campaign was a video that Coin published on its website and promoted with press releases and other communications. That video, entitled "One Coin for All of Your Cards," promoted the Coin device as a panacea for the problem consumers faced from having to carry around multiple credit and debit cards. The video, which was initially viewable on the Coin website, and is currently viewable at https://www.youtube.com/watch?v=w9Sx34swEG0.[2] contains the following screenplay:

> [Scene of actor in store] I'm here to tell you about Coin. It solves a problem I think most of us have.
>
> [Actor takes out wallet] See, my wallet is filled with cards. Credit cards, debit cards, rewards cards, gift cards. Filled with them. Too many.

---

[1] This is the closing line from Coin's video that all advance sale consumers watched prior to purchasing the Coin device.

[2] The YouTube video has been viewed more than 10 million times, in addition to all of the views by consumers of the video on Coin's own website as part of its advanced sales campaign.

Kronenberger Rosenfeld
150 Post Street, Suite 520, San Francisco, CA  94108

[Actor takes out and displays Coin device] This is a Coin. It's a simple card, just like a regular payment card.

[Actor displays back of Coin device, showing magnetic stripe] You can swipe it, just like any other card. The difference between a Coin and any other card… [Actor raises Coin device; a CGI depiction of several cards unrolls above Coin device; actor points to them] All these cards are inside my Coin. And I can pay for stuff with any of them.

[Actor points to a "card" floating above Coin device] I'm gonna use the personal card. ["Cards" contract back into Coin device and disappear.] My Coin has all the same data [actor hands Coin device to a salesperson] and acts just like my debit card when I swipe it. [Close up of clerk swiping Coin device into POS terminal]

[Scene of actor and others dining outside, actor displaying Coin device] This is a business lunch [Coin device "expands" again into virtual cards] so I'm gonna expense it on the business card. [Close up of front of Coin device, showing LCD screen] I just tap this button [actor demonstrates as different card nicknames cycle through on the LCD screen], to select the right card, and that's it. [Actor hands Coin device to server]

[Scene of actor at indoor counter, explaining how to swipe physical cards into the Coin app with a smartphone and the accompanying swipe device.] How do I get my cards in my Coin, you're asking? It's a fair question. I use this thing and the Coin app to swipe them in. Take a picture so I know which one it is.  And that's it.  Oh, security.

[Scene of actor walking down street, explaining security features; phone beeps] This is cool too. Let's say you pay with a Coin, you've got a lot on your mind, and you leave your Coin behind, like a dummy. See that? The Coin uses a low-power Bluetooth signal. It knows when your phone is near, and when it's not.

[Scene of actor inside first store, holding up Coin device] In this card, all your cards. ["Expands" Coin device to show even more "cards."] You can add as many as you want, and they stay the same size. ["Cards" collapse back into Coin device] **And all you ever need is one. One Coin for all your cards.** [Emphasis added] [Actor takes package and leaves scene; end frame of Coin logo, website address, and Twitter handle.]

33.    Similarly, during a December 5, 2013 interview with CNN Money, Coin CEO Kanishk Parashar said, "The consumer benefit is first and foremost [..] to combine everything into one, it's a simplification process."

34.    During the advance sales period, Coin did not allow customers to test a sample Coin device. The Coin app was not available online, so consumers could not even test out the software platform for the product. There was nothing (apart from Coin's own statements) from which the public could determine whether the Coin device was a

good purchase. All that the public could do was pay for the Coin device in advance in reliance upon the representations that Coin had made in its marketing.

35.     As a result of that video, the Coin advance sales program became one of the most instantly successful crowdfunding campaigns ever. The only impetus for the success of the Coin crowdfunding campaign was the promise and strong appeal of a consumer being able to carry only one card—the Coin device, which was supposedly secure—instead of multiple cards in a bulky wallet.  The entire point of the Coin video was to generate and foster that appeal, and it worked amazingly well.

### Delayed Delivery and Malfunctions of the Coin Device

36.     Coin's advanced sales campaign ended in approximately November 2014. However, delivery of the devices did not occur in a timely fashion. Almost immediately, Coin began issuing statements indicating that the delivery of the Coin device would be delayed. The statements usually indicated that the Coin device was still being developed or improved, or that problems were being worked out. These statements were intended by Coin to assuage the fears of the initial purchasers of the Coin device about whether the device they had purchased would indeed be delivered.

37.     Once Coin delivered the Coin devices to consumers, several significant problems with the device became apparent. First, and most notably, the Coin device failed to work at POS terminals anywhere from 15% to more than 40% of the time, because the Coin device could not store or transmit track 1 data to a POS terminal. Rather, the Coin device only stored and transmitted track 2 data.

38.     Because the Coin device did not transmit track 1 data, the Coin device did not transmit the cardholder's name, which is contained in a conventional credit card's track 1 data only.  As a result, the Coin device failed to work with merchants and POS terminals that required the transmission of the cardholder's name in addition to the card number.

39.     This defect alone meant that the Coin device did not live up to Coin's promises that it made in its video and other marketing materials: *i.e.* that the Coin device

1    would function as a complete and reliable replacement for *all* of a consumer's credit and

2    debit cards.

3        40.    Another significant problem with the Coin device was that a significant

4    portion of merchants' POS terminals could not read the magnetic stripe on the Coin

5    device altogether. Moreover, a sizeable percentage of merchants refused to accept the

6    Coin device, in contradiction of Coin's promise that the Coin device would work anywhere

7    that a conventional card would work. And in many situations, the Coin device was

8    rejected by ATMs outright, despite the fact that Coin had represented that ATMs would

9    accept the Coin device instead of a conventional debit or credit card.  Thus, while Coin's

10   CEO represented that the Coin device could be used "wherever your cards are used,"

11   this statement was false.

12       41.    A third problem with the Coin device was the frequent failure of the security

13   measure that Coin represented would alert the consumer to a missing Coin device and

14   lock the device until it was retrieved. That measure was also featured in the Coin

15   promotional video as an essential and attractive feature of the Coin device, assuring the

16   consumer that his or her Coin device was less likely to be misplaced (as when a

17   consumer mistakenly walks away from a restaurant without retrieving the Coin device

18   from the server, as was shown in the video). That security feature, however, did not work

19   as reliably as Coin had represented it would.  Many consumers found that they did not

20   receive alerts when their Coin device had been misplaced and left out of range. In that

21   manner, too, the Coin device did not fulfill the promises represented by Coin.

22   **Plaintiff Richard Kelly**

23       42.    Plaintiff Richard Kelly is a citizen of Oregon who purchased the Coin device

24   on November 20, 2013 after viewing the crowdfunding video and paying the $55 advance

25   purchase price. Mr. Kelly purchased his Coin device on the Coin website at

26   www.onlycoin.com. Mr. Kelly's purchase of his Coin device was simple, in that there was

27   a single sales page, with only the following graphical interface, without any contract

28   terms other than the terms appearing below:

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108



43.     Mr. Kelly relied upon the representations made by Coin in the promotional video on Coin's website and based his decision to purchase the Coin device on those representations.

44.     Mr. Kelly did not receive the Coin device until approximately July 10, 2015. When Mr. Kelly received the Coin Device, the device failed to function in several material respects that had been portrayed in Coin's crowdfunding video. Mr. Kelly experienced the same problems with unreliability, inconsistency, rejection by merchants and devices, and security failures described above, and were experienced by the members of the Class described below, and on behalf of which this action is brought.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1

**Plaintiff Manny Pagkalinawan**

2  45.  Plaintiff Manny Pagkalinawan is a citizen of California who purchased the

3  Coin device on December 1, 2013 after viewing the crowdfunding video and paying the

4  $55 advance purchase price.  Mr. Pagkalinawan purchased his Coin device on the Coin

5  website at www.onlycoin.com. Pagkalinawan's purchase of his Coin device was simple,

6  in that there was a single sales page, with only the following graphical interface, without

7  any contract terms other than the terms appearing below:

8

9


10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

46.     Mr. Pagkalinawan relied upon the representations made by Coin in the promotional video on Coin's website and based his decision to purchase the Coin device on those representations.

47.     Mr. Pagkalinawan did not receive the Coin device until October 26, 2015. When Mr. Pagkalinawan received the Coin Device, the device failed to function in several material respects that had been portrayed in Coin's crowdfunding video.    Mr. Pagkalinawan experienced the same problems with unreliability, inconsistency, rejection by merchants and devices, and security failures described above, and were experienced by the members of the Class described below, and on behalf of which this action is brought.

## CLASS ACTION ALLEGATIONS

48.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action on their own behalves and as representatives of all persons who purchased the Coin device during the advance sales campaign.

49.     A class action is appropriate here because there exists an ascertainable Class and a well-defined community of interest in the questions of law and fact involved.

50.     The Class is readily ascertainable from Coin's records of the purchasers of the Coin device during the advance sales campaign.

51.     A class action is the superior method of adjudicating this controversy because: a) the members of the Class are so numerous that the joinder of all members individually is impracticable, b) there are questions of law and fact common to the Class that predominate over any question affecting only individual Class members, and c) the claims of the representative Plaintiffs are typical of the claims of the Class, and the representative Plaintiffs will fairly and adequately protect the interests of the Class.

52.     The common questions of law and fact include:

- Whether Coin made material misrepresentations to the members of the Class about the performance of the Coin device;

- Whether Coin breached its contracts with the members of the Class

1        by failing to timely deliver the Coin device and/or by delivering a

2        product that did not function correctly;

3     •    Whether Coin engaged in unlawful, unfair, and fraudulent business

4        practices in violation of Business & Professions Code section 17200;

5     •    Whether Coin violated the California Consumer Legal Remedies Act,

6        Civil Code sections 1770, *et seq.*; and

7     •    Whether Coin breached the implied warranties of merchantability,

8        fitness, and fitness for a particular purpose in its sale of the Coin

9        device in violation of the California Song Beverly Consumer

10       Warranty Act, Civil Code §1792, *et seq.*

11    53.    Plaintiffs can and will fairly and adequately represent and protect the

12  interests of the Class because:

13     •    All of the questions of law and fact regarding the liability of Coin are

14        common to the Class and predominate over any individual issues

15        that may exist, such that by prevailing on their own claims, Plaintiffs

16        will necessarily establish the liability of Coin to all Class members;

17     •    Without the representation provided by Plaintiffs, it is unlikely that

18        any Class members would receive legal representation and/or obtain

19        recourse for the misconduct carried out by Coin; and

20     •    Plaintiffs have retained competent attorneys who are experienced

21        both in the conduct of class actions and the law governing online

22        advertising, e-contracting, and online payment systems.  Plaintiffs

23        and their counsel have the necessary resources to litigate this class

24        action, and Plaintiffs and their counsel are aware of their fiduciary

25        responsibility to the Class members and are determined to discharge

26        those duties to obtain the best possible recovery for the Class.

27

28  //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108



**FIRST CAUSE OF ACTION**

**(Violation of California Business and Professions Code §17200—brought by Plaintiffs individually and on behalf of the Class)**

54.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 53.

55.     By making the false and material misrepresentations about the Coin device described herein, Coin engaged in fraudulent business acts and practices in violation of California Business and Professions Code section 17200.

56.     By making false and material misrepresentations about the Coin device, Coin violated multiple California laws, and thereby engaged in unlawful business acts and practices in violation of California Business and Professions Code section 17200.

57.     Specifically in violation of the California Consumer Legal Remedies Act, section 1770 of the Civil Code, Coin sold the Coin device, and/or caused the Coin device to be sold, to Plaintiffs and the Class members through a series of false, deceptive, and unfair practices as described above, including without limitation a) false representations that the Coin device had uses, benefits, and/or quantities that it did not have; b) false representations that the Coin device was of a particular standard, quality, or grade while it was of another; c) advertisement of the Coin device with the intent not to sell it as advertised; and d) advertisement of the Coin device with the intent not to supply reasonably expected demand.

58.     Additionally, in violation of California Penal Code section 484, Coin stole, took, and/or carried the money of Plaintiffs and the other Class members and/or defrauded the Class members of their money.

59.     By knowingly making the false representations about the Coin device described herein, Coin engaged in conduct that the California legislature has found to be immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers, which caused substantial consumer injury that could not reasonably be avoided, and which is not outweighed by any countervailing benefit as reflected in California's

1  consumer protection statutes. As such, Coin engaged in unfair business acts and

2  practices in violation of California Business and Professions Code section 17200.

3      60.    As a result of Coin's misconduct, Plaintiffs and the other Class members

4  have suffered an injury in fact and have lost money or property as a result of Coin's acts

5  of unfair competition, entitling Plaintiffs and the Class to restoration of any money or

6  property Coin may have acquired by means thereof, as well as injunctive relief.

7                    **SECOND CAUSE OF ACTION**

8  **(Violation of California Business and Professions Code §17500—brought by**

9            **Plaintiffs individually and on behalf of the Class)**

10     61.    Plaintiffs incorporate by reference the allegations contained in Paragraphs

11 1 through 53.

12     62.    During its advance sale period, Coin published multiple advertisements and

13 promotional materials that represented that the Coin device would be a complete and

14 reliable replacement for consumers' conventional credit and debit cards.

15     63.    In its promotional video, Coin represented, "And all you ever need is one.

16 One coin for all your cards."

17     64.    Coin's video made additional representations and depictions that the Coin

18 device would completely and reliably replace all of a consumer's credit and debit cards.

19     65.    Coin's video was the centerpiece of Coin's advance sale marketing

20 campaign.

21     66.    Coin's representations were false in that the Coin device failed to work with

22 a large portion of merchants. Therefore, the Coin device was not a complete and reliable

23 replacement for all of a consumer's credit and debit cards.

24     67.    Coin's representations concerned a fundamental characteristic of the Coin

25 device, namely its ability to work reliably with all merchants.

26     68.    In deciding whether to purchase the Coin device, reasonable consumers

27 would have relied on—and in fact did rely on—Coin's false statements.

28     69.    Plaintiffs viewed the Coin video and relied on the video's false

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA 94108

1    representations in deciding to purchase the Coin device.

2        70.    As a result of Coin's misconduct, Plaintiffs and the other Class members

3    have suffered an injury in fact and have lost money or property as a result of Coin's false

4    advertisements, entitling Plaintiffs and the Class to restoration of any money or property

5    Coin may have acquired by means thereof, as well as injunctive relief.

6                              **THIRD CAUSE OF ACTION**

7    **(Violation of California Consumer Legal Remedies Act, Civil Code §§1750 *et seq.*—**

8                  **brought by Plaintiffs individually and on behalf of the Class)**

9        71.    Plaintiffs incorporate by reference the allegations contained in Paragraphs

10   1 through 53.

11       72.    In violation of the California Consumer Legal Remedies Act, section 1770 of

12   the Civil Code, Coin sold the Coin device, and/or caused the Coin device to be sold, to

13   Plaintiffs and the Class members through a series of false, deceptive, and unfair

14   practices as described above, including without limitation a) false representations that the

15   Coin device had uses, benefits, and/or quantities that it did not have; b) false

16   representations that the Coin device was of a particular standard, quality, or grade while

17   it was of another; c) advertisement of the Coin device with the intent not to sell it as

18   advertised; and d) advertisement of the Coin device with the intent not to supply

19   reasonably expected demand.

20       73.    As a direct and proximate result of Coin's violations of the California

21   Consumer Legal Remedies Act as described above, Plaintiffs and the Class are entitled

22   to statutory remedies against Coin, including without limitation an order enjoining the

23   methods, acts, or practices complained of above, and any other relief that the Court

24   deems proper.

25       74.    With the filing of this initial Complaint, Plaintiffs and the Class seek only

26   injunctive relief under this Cause of Action. Plaintiffs and the Class will make a demand

27   upon Coin for other relief provided by the California Consumer Legal Remedies Act in

28   accordance with Civil Code section 1782 and, upon the expiration of the demand period

KRONENBERGER | ROSENFELD
150 Post Street, Suite 520, San Francisco, CA  94108

1    set forth therein, will amend this Complaint to demand other forms of relief if an
2    appropriate correction, repair, replacement, or other remedy is not given or agreed to be
3    given within a reasonable time to the Class.

4        75.    This claim and this action generally are brought as a class action on behalf
5    of Plaintiffs and such other consumers as comprise the Class to recover damages or
6    obtain other relief as provided for in section 1780 of the California Civil Code, and such
7    class treatment of this action is appropriate because (a) it is impracticable to bring all
8    members of the Class before the Court; (b) the questions of law or fact common to the
9    class are substantially similar and predominate over the questions affecting the individual
10   members; and (c) the claims or defenses of the representative Plaintiffs are typical of the
11   claims and defenses of the Class.

12                      **FOURTH CAUSE OF ACTION**

13   **(Violation of California Song Beverly Consumer Warranty Act, Civil Code §§1792 *et***
14   ***seq.*—brought by Plaintiffs individually and on behalf of the Class)**

15       76.    Plaintiffs incorporate by reference the allegations contained in Paragraphs
16   1 through 53.

17       77.    The purpose of the Coin device is to consolidate all of a consumer's credit
18   and debit cards into a single card, enabling a consumer to carry only one card on their
19   person. Thus, it is essential to the purpose of a Coin device that the device works with all
20   merchants. If a Coin device does not work with all merchants, a consumer must carry
21   his/her other credit and debit cards, thereby defeating the purpose of the Coin device.

22       78.    By selling a Coin device to Plaintiffs and the other Class members, which
23   did not work with a large portion of merchants, Coin violated the implied warranty of
24   merchantability as set forth in Civil Code section 1792.

25       79.    By selling a Coin device to Plaintiffs and the other Class members, which
26   did not work with a large portion of merchants, Coin violated the implied warranty of
27   fitness, as set forth in Civil Code section 1792.1.

28       80.    By representing that the Coin device could be used to replace Plaintiffs' and

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  other Class members' credit and debit cards, and by selling a Coin device to Plaintiffs

2  and other Class members that did not work with a large portion of merchants, Coin

3  violated the implied warranty of fitness for a particular purpose, as set forth in Civil Code

4  section 1792.2.

5     81.   As a result of Coin's breaches of these implied warranties, Plaintiffs and the

6  other Class members have been injured.

7                          **FIFTH CAUSE OF ACTION**

8  **(Misrepresentation—brought by Plaintiffs individually and on behalf of the Class)**

9     82.   Plaintiffs incorporate by reference the allegations contained in Paragraphs

10  1 through 53.

11    83.   Coin made, approved of the making of, caused to be made, and/or

12  participated materially in the making of, representations of fact in the promotional video

13  during the advance sales campaign for the Coin device that Coin knew were false and

14  deceptive, including without limitation those representations alleged above and including:

15     a.   that the Coin device would replace Plaintiffs' and the Class members' credit

16          and debit cards by allowing Plaintiffs and the Class members to carry only

17          the Coin device (loaded with the data from their individual credit and debit

18          cards);

19     b.   that the Coin device would function as the credit or debit card of Plaintiffs'

20          and the Class members' choosing, on demand and consistently and

21          reliably;

22     c.   that the Coin device had a Bluetooth proximity-based security measure

23          which would alert the consumer to the fact that the Coin device had been

24          lost or misplaced; and

25     d.   that the Coin device would be delivered to purchasers in a reasonably

26          timely manner.

27    84.   The foregoing representations of fact were false when made.

28    85.   Coin made, approved of the making of, caused to be made, and/or

KRONENBERGER | ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1  participated materially in the making of, the foregoing representations of fact to Plaintiffs

2  and the Class members, as well as the public generally, while knowing that the same

3  were false, or while being reckless in that regard.

4      86.    Coin knew, or in the exercise of reasonable diligence should have known,

5  that Plaintiffs and the Class members would rely upon the foregoing representations of

6  fact in deciding to purchase the Coin device during the initial advance sales campaign.

7      87.    Plaintiffs and the Class members did in fact reasonably rely upon the

8  foregoing representations of fact in deciding to purchase the Coin device during the initial

9  advance sales campaign. But for the false representations of fact by Coin, Plaintiffs and

10  the Class members would not have purchased the Coin device.

11      88.    Plaintiffs and the Class members were damaged by reason of their

12  purchase of the Coin device in reliance upon the false representations of fact by Coin,

13  and are thus entitled to recover damages from Coin.

14      89.    Coin acted with oppression, fraud, or malice as defined in section 3294 of

15  the California Civil Code in the respects alleged herein, and Plaintiffs and the Class are

16  therefore entitled to recover exemplary damages from Coin as provided in that section.

17                          **SIXTH CAUSE OF ACTION**

18  **(Breach of Contract—brought by Plaintiffs individually and on behalf of the Class)**

19      90.    Plaintiffs incorporate by reference the allegations contained in Paragraphs

20  1 through 53.

21      91.    Plaintiffs and the Class members entered into legally valid, binding, and

22  enforceable written contracts by providing their credit card information into the Coin

23  transaction webpages described above in paragraphs 42 and 45.

24      92.    All of the express terms of this contract were disclosed to Plaintiffs and the

25  other Class members on Coin's purchase webpage disclosed above, and no other terms

26  were disclosed other than what is visible in the screenshots at paragraphs 42 and 45.

27      93.    The contract required Plaintiffs and the other Class members to pay the

28  purchase price for a Coin device to Coin.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

94.    The contract required Coin to deliver a functional Coin device to Plaintiffs and the other Class members beginning in the summer of 2014.

95.    Coin breached its contracts with Plaintiffs and the Class members by failing to deliver working and reliable Coin devices in a timely manner.

96.    Plaintiffs and the Class members performed all of their obligations under their contracts with Coin, including payment of the agreed-upon advance purchase price for the Coin device, except those obligations that Plaintiffs and the Class members were prevented or excused from performing.

97.    As a direct and proximate result of Coin's breach of its contracts with Plaintiffs and the Class members, Plaintiffs and the Class members have been damaged and are entitled to recover from Coin.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Richard Kelly and Manny Pagkalinawan, on behalf of themselves individually and all members of the Class alleged herein, respectfully request that the Court enter a judgment as follows:

1.    A judgment finding that:

    a.    Coin violated California Business and Professions Code section 17200;

    b.    Coin violated the California Consumer Legal Remedies Act;

    c.    Coin violated the California Song Beverly Consumer Warranty Act;

    d.    Coin made material misrepresentations of fact; and

    e.    Coin breached its contracts with Plaintiffs and the members of the Class.

2.    A preliminary and permanent injunction preventing Coin from advertising or marketing the Coin device as a complete and reliable replacement for conventional credit and debit cards.

3.    An order and/or judgment finding that Plaintiffs and the Class members have suffered an injury in fact and have lost money or property as a result of Coin's acts

KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

of unfair competition, and commanding Coin to restore to Plaintiffs and the Class members any money or property Coin may have acquired by means thereof.

     4.    A judgment awarding damages and monetary relief to Plaintiffs and the Class members as follows:

         a.    Damages in an amount to be determined at trial in the form of Plaintiffs' and the Class members' actual damages for Plaintiffs' and the Class members' claims under the Song Beverly Consumer Warranty Act, for misrepresentation, and for breach of contract;

         b.    An amount to be determined at trial in the form of restitution of the money wrongfully obtained from Plaintiffs and the other members of the Class through Coin's acts of unfair competition under Business and Professions Code §§17200 & 17500;

         c.    Exemplary damages pursuant to California Civil Code section 3294 for Plaintiffs' and Class members' misrepresentation claim;

         d.    A civil penalty of up to two times the amount of actual damages pursuant to California Civil Code section 1794(c);

         e.    Plaintiffs' and the other Class members' costs; and

         f.    An award of reasonable attorney's fees pursuant to California Civil Code section 1794(d).

     5.    Such other relief that the Court determines is just and proper.

DATED:  February 2, 2016          **KRONENBERGER ROSENFELD, LLP**

                                      By: _____s/Karl S. Kronenberger_____

                                          Karl S. Kronenberger

                              Attorneys for Plaintiffs RICHARD KELLY and MANNY PAGKALINAWAN, individually and on behalf of a class of similarly situated persons

KRONENBERGER ROSENFELD

150 Post Street, Suite 520, San Francisco, CA  94108

1

**REQUEST FOR JURY TRIAL**

2      Plaintiffs hereby demand a trial of this action by jury of all issues that may be tried

3   to the jury.

4

5   DATED:  February 2, 2016                    **KRONENBERGER ROSENFELD, LLP**

6

7                                               By: _____s/Karl S. Kronenberger_____

8                                                       Karl S. Kronenberger

9                                               Attorneys for Plaintiffs RICHARD KELLY
                                                and MANNY PAGKALINAWAN, individually
10                                              and on behalf of a class of similarly
                                                situated persons

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



150 Post Street, Suite 520, San Francisco, CA  94108

KRONENBERGER ROSENFELD

Case No. 3:16-cv-00567                    23                              **COMPLAINT**